May it please the Court, Lorraine Mansfield representing the appellant Virginia Wietor. The facts are this is an appeal from a grant of summary judgment to a defendant insurance company on an annuity contract. All annuities are not created equal. Here the insurance agent who sold the annuity contract to Wietor was licensed to sell insurance in the state of Illinois but not in the state of Nevada. The annuity he sold Wietor was highly unfavorable. Please refer to the affidavit of plaintiff's expert witness. It turns out that it was protected ERISA monies, E-R-I-C-A, which are non-taxable. He turned them into taxable income and he gave Wietor the total of only $1,634 monthly for 20 years. Is the favorability or not an issue that's before us? It goes to the equity of the case. The one and only issue before this Court at this time is is it illegal to have an unlicensed agent and to that the authorities are emphatically it is not legal. Nevada statutes, Nevada law, black letter law goes back 100 years. It simply is not okay to sell insurance without a license. The Nevada statutes are a complete set of the insurance statutes. They state that an insurance agent must be licensed at the time he sells insurance and in addition to that, it says it's for the protection of the public, of which of course Wietor is a member of the public. If your argument that had we had a licensed insurance agent, and I understand this may not be strictly relevant but maybe this is what you're trying to bring in with your equitable argument that if we had a licensed agent, that licensed agent never would have recommended this particular policy? No. In the opinion of the expert, it was highly unfavorable. This was monies that she was given as a widow, and in 20 years they'll dwindle to nothing. And in fact, the $1,600, which does not apply for inflation, will itself of course whittle to nothing by the end of 20 years. So even if he were licensed, which isn't really an issue on this appeal, but even if he had been licensed, which he was not, it was unfavorable. One questions why he would go out of state to find an insurance agent. Nevada is filled with insurance agents. There's plenty of them who would have been good, qualified local people who could have put her into good investments. Now, the governing legal principles. Excuse me, counsel. Isn't that the nature of annuities, however? You either have that type of an investment or one which goes to the market, which can go up or down. An annuity provides level payments over a period of years or a period of lifetime. So there's a choice of the kind of investment. Oh, yes, Judge, and this one was highly unfavorable as attested to by our expert. There are so many better investments. There would have been treasury bonds. There would have been just regular municipal bonds, non-taxable. And there's something brand new called TIPS, T-I-P-S, which are temporary insured treasury bonds which are insured by the federal government and they're adjusted for inflation. And at the end of the 20 years she gets her money back. Right now she gets nothing. Is there something in the evidence that says if she had chosen to get an annuity, she could have gotten a substantially better annuity? Oh, yes. All annuities are not created equal. Just because they call it an annuity doesn't mean it has all the qualifications of what one may think of as a good annuity. This particular annuity was highly unfavorable, and it was given to her in derogation of the law. It was simply an unlicensed agent. He had no business wheeling and dealing in the state of Nevada without a license. Nevada revised statute 683A-099 mandates that an insurance agent cannot sell insurance unless he then so holds a license. And the policy behind the licensing statute in Section 5, Judge Huck, it makes the selling of the insurance without a license a misdemeanor, which emphasizes the legislative policy behind this. Does it say anything about the insurance contract being void? That's why I'm asking the Court. I'm asking the Court to void this particular contract. Give this lady rescission, let her have her premium back, and put it into a more favorable investment, which is what should have been done right at the beginning. And it seems to me this is the only real issue before this Court. Please void this contract. Please give rescission here. When was this annuity bought? When was this particular annuity bought? About four years ago, and she was at age 58. Life expectancy would be age 80, so she'll be good. The reason I ask that is interest rates now are particularly low. Yes, they are. And they were higher then. I'm not sure if she gets the money back she can do any better. Well, we all hope that interest rates will go up very quickly. They've been at a historical low for quite a while now. Hope springs eternal. But you just represented to us that if she got the money back, she could then invest it at more favorable terms. I'm not at all sure that that's true in the current financial climate. Well, the Treasury bonds are at .16, and that would give her approximately $16.33 a month, which is the same as she's getting now, with the difference is she'll get the money back at the end. This way Canada Life gets to keep her money. I'm not sure my point is legally relevant, but in any event, okay, thank you. Oh, no, Your Honor, it's an excellent point, and the question is what kind of investments. Obviously, if she takes less secure investments, she'll get more interest. But this brand-new government Treasury bond, the TIPS, is potential because since it's pegged to inflation, within the next few years, surely inflation will go up again, the percent rates will go up again. It's been, what, five, six years now that we've seen historic lows on returns of money. This has to change. I mean, everything eventually goes up, and when it does, her interest rates will go up and the per month will go up, which, considering the fact that inflation will take place, will help her there. Now, your opponent is going to, I assume, argue that there was substantial compliance with Nevada law, and I don't think you've touched on that subject. Are you waiting for a rebuttal? Oh, I'll rebut right now. The law doesn't give any substantial requirement. The law is black and white. The law says at the time that he was selling insurance, he had to be licensed. That's NRS 683A. And in addition to that, there's a Nevada Attorney General opinion. It's from 1946, when this is black letter law in Nevada for many, many years now. It says, No person shall act as a solicitor without first procuring a license so to act. And then there's the Loomis v. Lange Financial Corporation case, Nevada, 1993, which said that the agent, not just the company, must be licensed. And, of course, the Loesch v. Bartholomew case from California in 1992, which states clearly an agent failed to become licensed prior to the transaction. The California court voided this contract. It said it was illegal, and it added, if the legislature forbids the carrying on of business without the securing of a license and makes such an action a criminal offense, any contract involved is void. Now, the reason that this California case is so valuable is referring to the very recent case from this Court, the Eischart v. Paul Revere, No. 0217136, which said that appellate decisions, if there's no case right on point in Nevada, which is common, Nevada's a small state, then this Court, the Ninth Circuit, will look to California law. So here we have a California law, Loesch v. Bartholomew, right exactly on point. The agent was not licensed. So there was no substantial compliance. It simply does not fit with the legislative scheme. Now, applying the law to the facts of the case, the general rule, the black letter law, is the argument that substantial compliance does not apply? Does not apply. The legislative scheme states very clearly that you have to comply with the law as an applicant. I think your opponent is going to argue that there was substantial compliance. If I may save my remaining time for rebuttal. Okay. Mr. Parker, on behalf of Canada Life Assurance Company, the law of Nevada is the one that applies here. And the law of Nevada allows this annuity. This was a simple annuity. The plaintiff in this case had an attorney who was licensed in LLM, in taxation, as well as licensed in financial planning. They sought out and contacted Mr. Fortney to buy an annuity, a simple annuity that her attorney had figured out was the best thing for her. And in hindsight, it has been. She's lost her home to gambling debts, pawned all her jewelry to gambling debts. This annuity, the only thing she has is giving her $2,000 a month for the rest of her life. If she dies before 20 years, the remainder of that goes to the kids. But she has it for life if she lives to be 100. And it's not alienable, right? Not alienable. And there have been attempts to get it by the people she owes gambling debts to. This is a case where Mr. Fortney immediately notified and said, hey, I'm not licensed in Nevada. I will immediately apply. It's similar to me coming before the court. I'm not licensed here. I send a notification to the court saying I'm not licensed, but I'm applying right away. And by today, I have my license, and I'm appearing here today. Mr. Fortney said, I don't have a license. Be aware. I'll immediately apply. He sent out an application for plaintiffs to fill out. She filled it out, sent it in. That's not a contract. It's only an application. Mr. Fortney ends up getting his license on August 2nd. He has his license. The policy isn't issued, I think, until August 15th. On August 25th, the policy is delivered to the plaintiff and her counsel. They look at it. At that time, the plaintiff also fills out another application, arguably validating any argument that they might have, and the policy says you have 10 days from August 25th, 2000 to void it. It's not even a contract at that point. You have 10 days. They have until September 5th. They don't do it. It becomes a binding contract on September 5th. As of that date, Mr. Fortney has been licensed for a month. There are cases on point in this and were cited by the lower court judge Dawson, and that's the case of Day v. West Coast Holding. It's a contractor's license case, which is even the fact that they allowed it in the Day v. West Coast Holding, where it involved a contract for somebody to come and do contracting work. He told the person, hey, I don't have a license in Nevada. An application is pending. He completed the work. The owner stiffed him. He sues for a lien, and the owner goes, hey, you can't sue me because there's a statute saying you can't collect, you can't file a suit unless you're a licensed contractor, which is much more onerous than the statute in this case, which only says you should be licensed before you need to be licensed to sell annuities in Nevada. It does not provide any onerous, like you can't sue, contract is void. However, in the Day v. West Coast, that statute even goes further and says you can't sue to collect this lien contractor because you didn't have a license. In that case, the Nevada Supreme Court even allowed the exception in that case because he had substantially complied. He had said, I don't have a license. He did obtain a license, I think, during the penancy, and then the work was done. It would be unequitable, unjust enrichment, to not apply the case. There was another, and that was specifically cited. That wasn't brought up, actually, by Canada Life. That was brought up by the judge himself. It cited another case, which then referenced it. This case wouldn't involve unjust enrichment, would it, though? I mean, both parties need to get their money back. Well, this case, there's already been 42 payments of $2,000, 42 months of payments to the plaintiff that's been paid out in this case. Well, if there's a complete rescission, those would be paid back. So it's different than the contractor situation, who has performed a lot of stuff that they're never going to get paid for. Here, both parties get their money back. That is correct. However, these contractors' cases, which I think are even ‑‑ if ever there's going to be a point where you want to maybe go the way of not allowing a contractor, it would be in the contractors' cases where construction can be performed, shoddy or not, and then you want to have licensed contractors. Here, however, the annuity doesn't even start until after he's licensed. They buy it. It doesn't go into effect until September 5th, after he's licensed. Let me ask you the following, and, again, I'm not sure this is legally relevant. I'm just trying to figure out the practicalities of this case. Why is it more advantageous as a practical matter from your client's standpoint to litigate this matter than simply to say, here's your money back? To be honest, Your Honor, I think they're looking at the best interests of Ms. Weider. They've seen that she's lost her gambling. They've had somebody try to get the assignment of this, these proceeds. She's lost her home. She's lost her jewelry. She doesn't have anything except this annuity, the $2,000. You're right. It would be probably cheaper for them in the long run to say, hey, I don't care about her. Here you go. Here's your money back. But that's not in the best interest of the public and especially the plaintiff in this case. And what may or may not be available now is irrelevant. The plaintiff had her counsel, who was qualified LLM, to figure out that he wanted this annuity. They contacted Fortney and said, we want this. He just sends them an application. He didn't solicit. And he's up front and says, hey, I don't have a license. I'm applying right now. After it's issued, she again fills out another application to be doubly safe. By the time it goes into effect, he's licensed. They haven't rescinded. And the courts, specifically in Davie West Coast, and there's another case which is cited, the McGill-Lewis case, specifically provide for the enforcement of a contract, specifically. And in this case, I think justice and equity requires this finding. I have one just factual question. This is not clear to me. Is this a lifetime annuity or a 20-year annuity? It's a lifetime. If she lives beyond 20 years, she gets $2,000 per month for her life. If she lives to, I forget what she said, 55. If she lives to be 100, she gets $2,000 per month or 120. She gets that until she dies. If she dies before 20 years, then the remaining annuity goes to her kids to be split up. After 20 years, if she dies at 30 years, it's gone. So it is a lifetime annuity. If she gets $2,000 for life, it cannot be assigned. And if she didn't. I'm sorry. Go ahead. One other factual question. Does the record show what the interest rate was, the basis for the calculation of the annuity? I'm not sure on that. Offhand, I don't have that right before me. Usually that's kind of a crucial thing in buying annuity, is what the interest rate part of the return that you're getting is calculated at. And I'm sure it was. And her counsel, who she was represented, as I said, has an LLM in taxation and was a certified financial planner. He was advising her. If he advised her incorrectly, it wasn't Mr. Fortney or Canada Life Assurance that was advising her. They responded to a solicitation by her counsel saying, we want this annuity based on representation from counsel that this is in her best interest. And they go, here's an application. So I think those issues were addressed, the interest rates and what things, were addressed by her counsel, who was very qualified to do that. Thank you. Any further questions from the bench? Thank you very much, counsel. I think you've got about a minute and a half. Well, let's knock the socks off of that substantial client argument the defendant just made. The McGill v. Lewis didn't really say what he said it would say. What it said was that it did not apply, because in that particular case, an agent went off and got licensed immediately. In this case, the agent, the Illinois insurance agent, started dealing with Wheater in February of 2000. This is right after her husband died. And, in fact, the first insurance document brings us through to May. Well, the agent didn't even apply until after all this selling insurance had gone on. In fact, he didn't apply. It's on the record that the insurance company itself sent him a memo, an email, saying, why aren't you licensed? Get yourself a license. Months had gone by then. There was no substantial compliance at all here. He didn't even try to get a license right away. And even if he had, of course, the black letter law of Nevada law says he has to have it at the time. And, no, this gambling debt, I mean. Have it at the time. At the time. What time?  He applied for the license, I believe, in May. No, I'm saying at what time do you contend that Nevada law requires that he have a license? Nevada law requires that he has a license right away at the very time that he starts selling insurance. It says at the time the application is procured, at the time the selling is going on. Not when you issue a policy months later, but at the time you're a salesman.  I couldn't be standing here practicing law if I was going to be taking the bar exam sometime next summer. Well, that all pertains to any action against him. For example, he could lose his commission or something like that. But does that have anything to do with the validity of the annuity itself? Well, the annuity is invalid because the contract, which is illegal, is not enforced by courts. It has never been enforced by courts, not even in common law. This is an absolutely void contract. And I object to this gambling debt idea. The poor lady is making $1,600 a month. She can barely afford to pay her rent. Well, she's actually getting $2,066 a month, is she not? The other is a withholding for taxes, which is probably going to be a good deal less withholding, I presume. But her husband thought he was leaving her with some monies, which are tax-free. Not when they're paid out. No, when you pay it out, they're taxable as ordinary income. Right. Okay. Thank you very much. The case of Weter v. Canada Life is now submitted for decision.
judges: Hug, Alarcon, W. Fletcher